UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ROBERT D. GENTRY,

        Plaintiff,

    v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY, and
Does 1-100,

        Defendants.

NO. CIV. S-09-0671 LKK/GGH

O R D E R

    Plaintiff Robert Gentry brings suit against defendant State Farm Mutual Automobile Insurance Company for tortious breach of the implied covenant of good faith and fair dealing and for breach of contract. Defendant moves to disqualify plaintiff's counsel on the ground that counsel's firm previously represented defendant in other insurance matters, and that firm's the prior representation gives rise to an imputed conflict of interest. For the reasons stated below, defendant's motion is denied.

**I. BACKGROUND**

**A.  Claims in This Suit**

    Plaintiff was involved in an automobile accident on August 27, 2004. Compl. ¶ 9. Plaintiff was allegedly hit by a motorist who

1

1  ran a red light. Plaintiff settled a claim against the driver and
2  vehicle owners' insurance carrier for $25,000, the limit on that
3  policy. Id.
4    At the time of the accident, plaintiff had an automobile
5  insurance policy issued by State Farm with underinsured motorist
6  ("UIM") coverage of $100,000 and $5,000 in medical payments
7  coverage benefits. Compl. ¶ 7. On or about December 23, 2006,
8  plaintiff made a claim to defendant State Farm seeking payment from
9  this policy for plaintiff's underinsured loss. Compl. ¶ 10.
10 Defendant offered less than $5,000 in settlement, which plaintiff
11 rejected, instead requesting on March 8, 2007 that the matter be
12 referred to arbitration. Compl. ¶ 11. Plaintiff engaged in
13 various efforts to have the matter submitted to binding
14 arbitration, and alleges that defendant wrongfully delayed
15 arbitration in various ways, primarily by disputing the medical
16 evidence of the extent and cause of plaintiff's injuries. Compl.
17 ¶¶ 15-25. The arbitration was finally concluded on October 11,
18 2008, with an award of $101,794.44 to plaintiff. Declaration of
19 Colleen Van Egmond, ¶ 6.
20   Plaintiff filed the instant suit in state court on January 26,
21 2009. Plaintiff alleges that defendant engaged in insurance bad
22 faith by, inter alia, refusing to make an initial good faith offer
23 and by delaying arbitration, Compl. ¶ 35; and that defendant's
24 conduct breached the insurance policy, Compl. ¶ 46. Defendant
25 stated an appearance in March 2009. On March 11, 2009, defendant
26 filed an answer, and on the same day, defendant removed the case

to this court. On May 22, 2009, defendant filed a scheduling/status report which mentioned that defendant would seek to disqualify plaintiff's counsel. The instant motion was then filed on July 20, 2009. There have been no other proceedings in this case.

**B.     Plaintiffs' Current Representation**

Plaintiff retained attorney Coleen F. Van Egmond in connection with this matter July 14, 2006, and Van Egmond has continued to represent plaintiff in this dispute since that time. At the time she was retained, Van Egmond was with the firm of Thayer Harvey Gregerson Hedberg & Jackson in Modesto, CA. Van Egmond Decl., ¶ 4. On September 1, 2007, that firm dissolved, and Van Egmond joined the firm of Curtis & Arata in Modesto, California. At plaintiff's request, Van Egmond continued to represent plaintiff.

At Curtis & Arata, William A. Lapcevic joined the firm in January 2008. Lapcevic has been primarily assigned to work with Van Egmond, and has assisted in this case. Id. Plaintiff's counsel declares that no other attorney at Curtis & Arata has worked on this case. Id.[1]

**C.     Defendant Was Previously Represented by Curtis & Arada**

Curtis & Arata began representing defendant in first-party and third-party insurance claims, including underinsured motorist

---

[1] Defendant notes that Van Egmond and Lapcevic are associates at Curtis & Arata who have spent little time at the firm, and defendant questions whether the two attorneys have received at least some supervision or oversight in this matter. However, defendant has not provided any evidence contradicting Van Egmond's declaration in this regard.

3

claims, in 1995.  Decl. of Richard McBrien in Support of Def.'s Mot., ¶ 4.  The parties disagree as to how long this representation continued.  Defendant declares that their records indicate that such representation continued into 2008.  McBrien Decl. ¶ 6.  However, plaintiff provides the declaration of George S. Arata, a principal at the firm of Curtis & Arata, and this declaration states that such representation ended in August of 2007, at which time all files related to defendant's cases were transferred, but that Curtis & Arata continued to collect fees for work that had already been performed through 2008.[2]  Decl. of George Arata in Opp'n to Def.'s Mot., ¶ 4.  In the course of this representation, defendant paid Curtis & Arata $367,604.38 for 107 first-party uninsured and underinsured motorist ("UM/UIM") cases.  McBrien Decl. ¶ 6.

Arata declares that in the time in which Curtis & Arata represented defendant, Curtis & Arata never represented defendant in "coverage matters" or in a "bad faith, breach of contract or breach of the implied covenant of good faith and fair dealing" matters.  Arata Decl. ¶ 6.  Instead, "[a]ll files which were assigned to Curtis & Arata by State Farm were files wherein Curtis & Arata provided a defense with respect to UM and UIM actions against State Farm and wherein Curtis & Arata was appointed by

---

[2] Thus, defendant contends that in September of 2007, Curtis & Arata represented plaintiff in proceedings against defendant, but that Curtis & Arata simultaneously represented defendant in other matters.  However, defendant characterizes the alleged conflict of interest as one arising from successive, rather than simultaneous, representation.

4

State Farm as defense counsel in third party actions for insureds of State Farm." Id. ¶ 3. Defendant does not dispute this characterization.

During the course of this prior representation, defendant contends that Curtis & Arata

> formed and communicated legal opinions to State Farm concerning defenses available to State Farm; . . . determined and advised State Farm as to what further investigation was required before a decision on a claim was made; evaluated and assessed settlement demands made by claimants against State Farm; provided advice and legal opinions to State Farm in formulating settlement offers; and provided legal opinions and advice to State Farm concerning risks and benefits in proceeding to trial.

McBrien Decl. ¶ 5. However, plaintiffs contend that Curtis & Arata did not "assist[] in devloping or forming any of the practices of State Farm regarding coverage of claims or denial of coverage." Arata Decl. ¶ 6.

**D. Curtis & Arada's Representation of Parties Adverse to Defendant in Other Matters**

Also since September 1, 2007, Curtis & Arada has represented parties opposing defendant in approximately 39 other cases, either "by way of first party UM or UIM actions against State Farm or by way of third party actions against individuals or entities insured by and provided a defense by State Farm." Arata Decl. ¶ 5. Defendant has not sought to disqualify Curtis & Arata attorneys in any other action.

////

5

1  **II. STANDARD FOR A MOTION TO DISQUALIFY AN ATTORNEY**

2  A motion to disqualify counsel is predicated upon the rules
3  regarding the professional obligations of attorneys, including, as
4  is relevant here, the rules regarding conflicts of interest.
5  Accordingly, the motion is resolved by application of state law.
6  County of Los Angeles v. United States Dist. Court, 223 F.3d 990,
7  993 n.1, 995 (9th Cir. 2000); see also E.D. Cal. Local Rule 83-
8  180(e) ("[T]he Rules of Professional Conduct of the State Bar of
9  California . . . are hereby adopted as standards of professional
10 conduct in this court.").

11 "Whether an attorney should be disqualified is a matter
12 addressed to the sound discretion of the trial court." Henriksen
13 v. Great Am. Savings & Loan, 11 Cal. App. 4th 109, 113 (1992); see
14 also Trone v. Smith, 621 F.2d 994, 999 (9th Cir. 1980).

15 Here, defendant argues that plaintiff's counsel is in
16 violation of California Rule of Professional Conduct 3-310(E).
17 This rule states that an attorney:

> shall not, without the informed written consent of the client or former client, accept employment adverse to the client or former client where, by reason of the representation of the client or former client, the member has obtained confidential information material to the employment.

22 Although the California rules differ from the ABA Model Rules, and
23 California has not adopted the model rules, "they may serve as
24 guidelines absent on-point California authority or a conflicting
25 state public policy." City and County of San Francisco v. Cobra
26 Solutions, Inc., 38 Cal. 4th 839, 852 (2006); see also County of

6

Los Angeles, 223 F.3d at 993 n.1.

### III. ANALYSIS

Defendant recognizes that plaintiff's counsel herself did not personally previously represent defendant. Instead, defendant argues that other unnamed attorneys at Curtis & Arata previously personally represented defendant in materially similar matters, giving rise to a non-rebuttable presumption that these attorneys acquired confidential information pertinent to this case, and that these attorneys' knowledge should be imputed to, and thereby disqualify, plaintiff's counsel.

Plaintiff offers three counterarguments. First, plaintiff argues that defendant has delayed in seeking disqualification and thereby waived the right to do so. Second, plaintiff argues that the instant matter is not substantially similar to prior matters, such that disqualification is not required. Third, plaintiff argues that even if in the course of prior representation other Curtis & Arada attorneys learned confidential information material to the instant suit, their knowledge need not be imputed to plaintiff's counsel, because a de facto ethical wall has isolated counsel, and this ethical wall can be made explicit. This court concludes that defendant has waived the right to seek disqualification, and therefore does not address the remaining arguments.[3]

---

[3] The court notes that many cases considering implied waiver of disqualification due to delay have analyzed whether a conflict exists before turning to waiver. See, e.g., River W. v. Nickel, 188 Cal. App. 3d 1297 (1987). However, the analysis of a conflict

7

California courts have consistently held that a former client may waive the right to seek disqualification of an attorney by delaying raising the issue, notwithstanding the fact that the California Rules of Professional Conduct state that a conflict of interest may be waived by the "informed written consent of the . . . former client." River W. v. Nickel, 188 Cal. App. 3d 1297 (1987); see also Zador Corp. v. Kwan, 31 Cal. App. 4th 1285, 1302-03 (1995), W. Cont'l Operating Co. v. Natural Gas Corp., 212 Cal. App. 3d 752, 763-764 (1989). These cases have articulated a test for waiver particular to this context. The present client may oppose disqualification by offering "prima facie evidence of an unreasonable delay by the former client in making the motion and resulting prejudice to the current client." River W., 188 Cal. App. 3d at 1309. "Delay will not necessarily result in the denial of a disqualification motion; the delay and the ensuing prejudice must be extreme." W. Cont'l Operating Co., 212 Cal. App. 3d 764. Once this showing is made,

> The burden then shifts back to the party seeking disqualification to justify the delay. That party should address: (1) how long it has known of the potential conflict; (2) whether it has been represented by counsel since it has known of the potential conflict; (3) whether anyone prevented the moving party from making the motion earlier, and if so, under what circumstances; and (4) whether an earlier motion to disqualify would have been inappropriate or futile and why.

---

has not influenced the analysis of waiver. Id. Accordingly, California law does not compel this court to first analyze whether such a conflict actually exists before turning to whether any possible conflict has been waived.

8

River W., 188 Cal. App. 3d at 1309. Although River West describes the initial showing of unreasonable delay as a step distinct from the showing of possible justification, in practice, the inquiry into the "reasonableness" of a delay cannot be separated from the four justification factors identified by River West. California courts, including River West, appear to have treated the first step as merely requiring showing of a lengthy delay, placing the burden on the moving party to show justification or reasonableness. Id., W. Cont'l Operating Co., 212 Cal. App. 3d at 764.[4]

---

[4] California courts have repeatedly noted that motions to disqualify are often brought for strategic purposes, rather than to protect confidential information and the integrity of the judicial process. "[A]s courts are increasingly aware, motions to disqualify counsel often pose the very threat to the integrity of the judicial process that they purport to prevent." Zador Corp., 31 Cal. App. 4th at 1303 (quoting Gregori v. Bank of Am., 207 Cal. App. 3d 291, 300 (1989)); W. Cont'l Operating Co., 212 Cal. App. 3d at 763, Maruman Integrated Circuits v. Consortium Co., 166 Cal. App. 3d 443, 450 (1985). "It would be naive not to recognize that the motion to disqualify opposing counsel is frequently a tactical device to delay litigation." Comden v. Superior Court of Los Angeles County, 20 Cal. 3d 906, 915 (1978) (considering a motion to disqualify an attorney as a witness). Plaintiffs argue that the present motion is so motivated, as demonstrated by the fact that in 39 other UM/UIM cases brought since Curtis & Arada ceased representing defendant, Curtis & Arada has represented parties adverse to defendant. Arata Decl. ¶ 5.
Although California courts have frequently recognized that motions seeking disqualification are brought for these purposes, this court is not aware of any case in which this recognition explicitly factored into a court's analysis. Instead, the courts appear to have applied the above test for waiver. But see Zador, 31 Cal. App. 4th at 1302 (finding an explicit waiver of disqualification, but alternatively noting that although a defendant "promptly moved to disqualify [plaintiff's counsel] soon after [plaintiff] filed suit against him[,] . . . the possibility of litigation was evident nearly three years before [defendant] filed his motion, . . . . Thus, it is a possibility that the motion to disqualify was used as a litigation tactic."). While in other contexts California courts have conducted some discussion of "The

9

The question of waiver, like the question of disqualification generally, lies within the discretion of the trial court. W. Cont'l Operating Co., 212 Cal. App. 3d at 763. In this case, plaintiff has shown both delay and prejudice.

**A.   Delay**

Beginning with delay, California court's evaluation of delay has been fact specific. In River West itself, the action was initially filed on August 5, 1980, and the motion to disqualify was brought over four years later, on October 10, 1984. River W., 188 Cal. App. 3d at 1312. The court concluded that even if all of the moving party's explanations for the delay were credited, there was a thirty month unexplained delay between the time the moving party learned of the conflict and the time he sought disqualification. Id.

In W. Cont'l Operating Co., the court concluded that there was no unreasonable delay. 212 Cal. App. 3d at 764. The complaint was served in January of 1987. An answer was filed in November of 1987. In December, one party informed the other that the former would seek disqualification of counsel. The prior client attempted to resolve the matter without a motion for two months, until a

---

possibility of there being implied consent to adverse representation by conduct other than delay," they have not clearly spoken to the issue. State Farm Mut. Auto. Ins. Co. v. Fed. Ins. Co., 72 Cal. App. 4th 1422, 1434 (1999) (citing Health Maintenance Network v. Blue Cross of So. California, 202 Cal. App. 3d 1043 (1988)).

Because this court concludes that the River West test is satisfied, the court need not speculate as to whether California courts would hold that a showing of improper strategic motive, without satisfaction of this test, could demonstrate waiver.

10

1  motion to disqualify was filed in late January 1988.  Id.  The
2  court held that the two month delay between filing the answer and
3  the filing of the motion to disqualify was explained by the efforts
4  to negotiate a good faith solution, and that the earlier 11 month
5  delay between the filing of the complaint and the attempt to gain
6  voluntary withdrawal was adequately explained by other evidence
7  which the court declined to summarize.  Id.  Accordingly, the court
8  affirmed the trial court's disqualification.  Id.

9  A third case considering delay in seeking disqualification is
10 Zador, 31 Cal. App. 4th at 1302.  Zador overturned the trial
11 court's grant of a motion to disqualify on the ground that the
12 prior client had explicitly consented to the future adverse
13 representation.  Id.  However, as an alternative ground for this
14 holding, the court concluded that although a defendant "promptly
15 moved to disqualify [plaintiff's counsel] soon after [plaintiff]
16 filed suit against him[,] . . . the possibility of litigation was
17 evident nearly three years before [defendant] filed his motion,"
18 and that this suggested that the motion was unreasonably delayed.
19 Id.

20 More recently, a California court considered a case in which
21 two insurers had previously been represented by the same counsel,
22 and one insurer attempted to disqualify said counsel from
23 representing the other.  State Farm Mut. Auto. Ins. Co. v. Fed.
24 Ins. Co., 72 Cal. App. 4th 1422 (1999).  In 1996, State Farm
25 retained a firm to advise it regarding coverage available to an
26 insured arising out of a motor vehicle accident.  Id. at 1426.  The

11

firm concluded that Federal provided additional coverage, and informed Federal of this conclusion.  Federal disagreed, and declined to intervene in the action.  In 1997, Federal retained the firm in an unrelated matter.  In 1998, using the same firm, State Farm filed suit against Federal, seeking subrogation of damages arising out of the original suit.  Federal moved to disqualify the firm.  The court of appeals concluded that the firm should have been disqualified, as simultaneously representing clients with adverse interests.  Id. at 1430.  In reaching this conclusion, the court concluded that Federal had not waived disqualification:

> although [the parties] were taking opposing positions on [an insurance coverage dispute] in 1996, the actual complaint was not filed until February 1998.  Until the complaint was filed, the trial court could not rule on a motion to disqualify [counsel] under the aegis of the subject action.  [The prior client] brought the conflict to [counsel's] attention approximately one month after the complaint was filed. [¶] Thus, delay is not a factor in this case.

Id. at 1434 (citing River West, 188 Cal. App. 3d at 1309).

One final illustration of this rule has been provided by the Northern District of California.  Employers Ins. of Wausau v. Albert D. Seeno Constr. Co., 692 F. Supp. 1150, 1166 (N.D. Cal. 1988).  Plaintiff moved to disqualify defendant's counsel based on prior representation of plaintiff, and the court denied this motion was unreasonably delayed.[5]  The parties filed cross motions to

---

[5] Defendant and plaintiff in Employers Ins. of Wausau also moved to disqualify each other's counsel on various other grounds.  These motions were denied, and are not relevant to the current dispute.  692 F. Supp. at 1158, 1161.

12

disqualify each others' counsel. Id. at 1152. The case was filed in August 1986, id. at 1153, and plaintiff moved to disqualify in October of 1987, id. at 1165. The court held that while plaintiff offered an explanation as to why it did not seek disqualification on other grounds at an earlier time, the plaintiff had not attempted to explain why the conflict issue had not been raised earlier. Id. at 1166. Accordingly, the court held that the fourteen-month delay was unreasonable. Id.

Here, the parties dispute how the delay should be measured. Plaintiff argues that the delay began in September 2007, when plaintiff's counsel joined Curtis & Arata and the potential conflict arose. Although obviously no motion to disqualify could have been filed in this action until this case was filed in January 2009, plaintiff contends that disqualification could have been sought by other means at earlier times. Defendant contends that the onset of the delay was the day in which defendant stated an appearance in this case.

On the facts of this case, the court adopts plaintiff's position. The California Court of Appeals' decision in Zador implies that when a party knows of a potential conflict in representation prior to the filing of a suit, failure to act on that conflict at that time may waive the right to do so. 31 Cal. App. 4th at 1302. The court acknowledges that in State Farm, another California Court of Appeals held that the time in which a party was aware of a conflict prior to the filing of a complaint did not count as a delay. 72 Cal. App. 4th at 1434. Both opinions

13

1 in turn purported to follow River West.  Insofar as this court must
2 strive to reconcile Zador and State Farm, or to conclude which is
3 more likely to be followed by the California Supreme Court, it
4 appears that in State Farm, there was no adversary proceeding
5 between the parties in which a motion to disqualify could have been
6 filed prior to the filing of the complaint in that suit.  Thus, the
7 delay was justified under the third or fourth River West factors.
8 The court in Zador made no such finding.  Here, the parties were
9 engaged in an adverse arbitration proceeding at or soon after the
10 time defendant learned of the conflict (September 2007), and
11 defendant here has not attempted to show that no motion to
12 disqualify could have been brought in that proceeding.

13 The court further rejects defendant's contention that the
14 delay ended when defendant filed a status report indicating an
15 intent to seek disqualification.  The mere indication of such an
16 intent cannot stop the clock on calculation of delay.  In the only
17 California case cited by the parties that discussed an indication
18 of an intent to seek disqualification prior to the filing of a
19 motion, W. Cont'l Operating Co., the delay between the early
20 indication and the motion was explained by the party's attempts to
21 seek resolution of the conflict by other means.  Here, defendant
22 has not offered any explanation as to why, although it identified
23 the conflict in May of 2009, its motion to disqualify was not filed
24 until July.  Accordingly, the court concludes that defendant
25 delayed from sometime around September 2007 until July 2009 in
26 seeking disqualification.

14

1    The court recognizes that in many cases, it will be
2 inappropriate to hold that an attorney's former client waives the
3 right to seek disqualification in one case by failing to raise the
4 issue in a prior proceeding.  Had the arbitration proceedings in
5 this case concerned some unrelated matter, then disqualification
6 would not have been available in the prior proceeding.  However,
7 River West appears to put the burden of showing that prior attempts
8 to seek disqualification would have been futile on the moving
9 party.  188 Cal. App. 3d at 1309.  Defendant has not attempted to
10 make this showing here.

11    Accordingly, the court concludes that defendant unjustifiably
12 delay approximately twenty-two months before seeking
13 disqualification based on a conflict arising from successive
14 representation.[6]  Measured against the other cases, this delay is

---

[6] Even if the court were to conclude that defendant could not have sought disqualification prior to the filing of this suit (or that only delay during this suit was relevant), this court would conclude that the delay was unreasonable and extreme.  The only case cited above to have found no waiver when a delay was completely without explanation was State Farm, which considered a delay of one month.  72 Cal. App. 4th at 1434.  Although defendant cites W. Cont'l Operating Co., 212 Cal. App. 3d at 764, for the proposition that delays of two, or even eleven, months are not extreme, the court in that case concluded that every month of the delay could be explained, either by the fact that the moving party was diligently seeking to resolve the conflict through other means or by other facts.  Id.  Here, where defendant was thoroughly aware of the potential conflict of interest well before this suit was filed, defendant's delay of six months after the suit was filed, or of four months after defendant answered, is both unjustified and extreme.

Although the court determines that an unreasonable delay would exist even if defendant could not have sought disqualification prior to the filing of this suit (or if defendant's failure to do so is deemed to be irrelevant), the court does not address whether plaintiff would have succeeded in showing extreme prejudice in this

more than sufficiently "extreme" to support a finding of waiver.

**B.   Prejudice**

Delay, even if it is extreme and unreasonable, is not itself sufficient to waive the right to seek disqualification based on a conflict of interest. River West, 188 Cal. App. 3d at 1311. The non-moving party must also show prejudice resulting from the delay, and this prejudice must be more than merely the inability to proceed with the attorney the current client would have initially chosen. Id.

River West involved a particularly severe example of prejudice. Defendant sought to disqualify plaintiff's counsel after counsel had engaged in "over 3,000 hours of litigation effort at a cost of $387,000." 188 Cal. App. 3d at 1313. The court concluded that aside from a loss of time and money, disqualification would prejudice plaintiff by calling into question the right to possession and interpretation of work product that had been generated in that time. These factors constituted prejudice sufficient to demonstrate, together with the delay, an implied waiver.

Although River West concerned truly outrageous prejudice, other courts interpreting California law have found lesser prejudice to be sufficiently "extreme" to waive disqualification, and nothing in River West suggests that lesser prejudice will not suffice. In Employers Ins. of Wausau, the court explained that:

---

event.

16

> It is also undeniable that disqualification of Archer would result in considerable prejudice and hardship to Seeno. Archer has done an extensive amount of work in this action as well in as the underlying third-party cases, and any new counsel would have to spend a great deal of time becoming familiar with the many claims and issues in dispute. Similarly, it cannot be doubted that such replacement would seriously delay the handling of both the underlying claims and the present action.

692 F. Supp. 1150, 1166 (N.D. Cal. 1988).

Wausau is analogous to the facts here. The instant suit arises out of, and builds upon, the work that plaintiff's counsel already performed for plaintiff in the underlying UIM arbitration and related proceedings. If plaintiff's counsel is disqualified, plaintiff's ability to litigate the current proceeding will be impaired, work already completed may become unusable, and serious delay would almost certainly result. These forms of prejudice may be attributed to defendant's delay in seeking disqualification, because if defendant had sought disqualification during the pendency of the arbitration proceedings, there would not have been a risk of depriving plaintiff of the ability to have the UIM claim and the resulting bad faith claim litigated by the same counsel. Accordingly, the court concludes that plaintiff has shown extreme and unreasonable delay and prejudice, and that defendant has not otherwise justified the delay, such that defendant's motion must be denied.

## IV. CONCLUSION

For the reasons stated above, defendant's motion to disqualify, Doc. No. 10, is DENIED.

1     IT IS SO ORDERED.

2     DATED:  September 3, 2009.

					LAWRENCE K. KARLTON
					SENIOR JUDGE
					UNITED STATES DISTRICT COURT

18